UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

FERNANDO LOPEZ, ADOLFO LOPEZ, VENANCIO
GALINDO and GIL SANTIAGO,

                            Plaintiffs,

               - against -

FLOR DE MAYO, INC., CHO FAMILIA DYNASTIA,
INC., PHILLIP CHU, DENNIS CHU and JOSE TSO,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

No. 07 Civ. 6526 (AJP)

## **PLAINTIFFS' PRETRIAL MEMORANDUM OF LAW**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

URBAN JUSTICE CENTER
123 William Street, 16th Floor
New York, New York 10038
(212) 459-3006

*Attorneys for Plaintiffs*

March 18, 2008

# TABLE OF CONTENTS

PAGE

**TABLE OF AUTHORITIES** ....................................................................................iii

**PRELIMINARY STATEMENT** .............................................................................. 1

**ARGUMENT** ........................................................................................................... 3

I. **PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW** ...................................................................... 3

    A. Plaintiffs Are Entitled to the Ordinary Minimum Wage and Overtime Compensation Under FLSA ...................................................................... 3

    B. Plaintiffs Are Entitled to the "Tipped Service Employee" Minimum Wage and Overtime Compensation Under New York Labor Law ................................ 6

    C. Plaintiffs Are Also Entitled to Spread-of-Hours Compensation ........................... 6

    D. Plaintiffs Are Entitled to Compensation for Every Hour of Their Shifts, Including Wait Time ....................................................................... 7

    E. Plaintiffs May Establish Their Wages and Hours Through Testimony at Trial ....................................................................................... 10

II. **DEFENDANTS MAY NOT TAKE A MEAL ALLOWANCE** ................................ 12

III. **PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR THE PURCHASE AND MAINTENANCE OF BICYCLES UNDER FLSA AND NEW YORK LABOR LAW** ............................................................................ 13

IV. **PLAINTIFFS ARE ENTITLED TO RECOVER UNPAID WAGES UNDER FLSA FOR THE ENTIRETY OF THEIR EMPLOYMENT** ................................ 14

    A. The Applicable FLSA Statute of Limitations Should Be Three Years .............. 14

    B. The FLSA Statute of Limitations Should Be Equitably Tolled ......................... 15

    C. The Statute of Limitations Under New York Labor Law Is Six Years.............. 18

i

**V.    PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES UNDER FLSA OR LIQUIDATED DAMAGES AND PREJUDGMENT INTEREST UNDER NEW YORK LABOR LAW** ........................................................................ 18

    A.    FLSA Liquidated Damages ................................................................ 18

    B.    New York Labor Law ........................................................................ 20

**VI.    EACH DEFENDANT IS AN EMPLOYER JOINTLY AND INDIVIDUALLY LIABLE FOR UNPAID WAGES** ................................. 21

**CONCLUSION** ............................................................................................ 23

# TABLE OF AUTHORITIES

PAGE

**Cases**

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)..................................................10, 11

Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184 (S.D.N.Y. 2003) ....................21

Armour & Co. v. Wantock, 323 U.S. 126 (1944) ..........................................................................7

Arriaga v. Fla. Pac. Farms, L.L.C., 305 F.3d 1228 (11th Cir. 2002) ..........................................14

Baba v. Grand Central P'ship, No. 99 Civ. 5818 (TPG), 2000 U.S. Dist. LEXIS 17876
    (S.D.N.Y. Dec. 8, 2000)..........................................................................................................17

Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464 (5th Cir. 1979)..........................................5

Blake v. CMB Constr., Civil No. 90-388-M, 1993 U.S. Dist. LEXIS 21181
    (D.N.H. Mar. 30, 1993)..........................................................................................................17

Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258 (2d Cir. 1990)....................15

Breen v. Concrete by Wagner, Inc., No. 98 C 3611, 1999 U.S. Dist. LEXIS 17401
    (N.D. Ill. Nov. 3, 1999)..........................................................................................................15

Brock v. DeWitt, 633 F. Supp. 892, 893 (W.D. Mo. 1986)............................................................9

Brock v. Superior Care, Inc., 840 F.2d 1054 (2d Cir. 1988)........................................................22

Brock v. Wilamowsky, 833 F.2d 11 (2d Cir. 1987)................................................................18, 19

Brown v. Tomcat Elec. Sec., Inc., No. 03 Civ. 5175 (FB) (JO), 2007 U.S. Dist. LEXIS
    63542 (E.D.N.Y. Aug. 27, 2007) ..........................................................................................11

Callowhill v. Allen-Sherman-Hoff Co., 832 F.2d 269 (3d Cir. 1987)..........................................18

Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45 (2d Cir. 1985) ........................16

Chan v. Sung Tue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 U.S. Dist. LEXIS 7770
    (S.D.N.Y. Feb. 1, 2007) ......................................................................................................4, 6

Chao v. Gotham Registry, Inc., 514 F.3d 280 (2d Cir. 2008)..................................................8, 10

Chung v. New Silver Palace Rest., 246 F. Supp. 2d 220 (S.D.N.Y. 2002)....................................4

# TABLE OF AUTHORITIES

Page

Cortez v. Medina's Landscaping, No. 00 C 6320, 2002 U.S. Dist. LEXIS 18831
    (N.D. Ill. Sept. 30, 2002) ....................................................................................... 17

Dole v. Bishop, 740 F. Supp. 1221 (S.D. Miss. 1990) ............................................... 9, 13

Donovan v. New Floridian Hotel, Inc., 676 F.2d 468 (11th Cir. 1982) ....................... 12

Doubleday & Co. v. Curtis, 763 F.2d 495 (2d Cir. 1985) ............................................ 19

EEOC v. Ky. State Police Dep't, 80 F.3d 1086 (6th Cir. 1996) ................................... 18

English v. Pabst Brewing Co., 828 F.2d 1047 (4th Cir. 1987) ..................................... 18

Falk v. Brennan, 414 U.S. 190 (1973) ......................................................................... 21

Henchy v. City of Absecon, 148 F. Supp. 2d 435 (D.N.J. 2001) ................................. 17

Herman v. Collis Foods, Inc., 176 F.3d 912 (6th Cir. 1999) ....................................... 12

Herman v. RSR Sec. Servs., Ltd., 172 F.3d 132 (2d Cir. 1999) ......................... 15, 19, 20, 21, 22

Hy-Tech Coatings v. N.Y. State Dep't of Labor, 226 A.D.2d 378 (2d Dep't 1996) .......... 11

Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363 (S.D.N.Y. 2007) ................. 17

Jiao v. Chen, No. 03 Civ. 165 (DF), 2007 U.S. Dist. LEXIS 96480
    (S.D.N.Y. Mar. 30, 2007) ................................................................................... 9, 21

Kamens v. Summit Stainless, Inc., 586 F. Supp. 324 (E.D. Pa. 1984) ......................... 17

Kilgore v. Outback Steakhouse, 160 F.3d 294 (6th Cir. 1998) ...................................... 4

Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 U.S. Dist. LEXIS 35
    (S.D.N.Y. Jan. 7, 2004) .......................................................................................... 7

Martin v. Tango's Restaurant, Inc., 969 F.2d 1319 (1st Cir. 1992) ........................... 4, 5

McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988) .............................................. 14

Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41 (1st Cir. 2005) .......... 18

Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20 (2d Cir. 1985) ....................................... 16

Moon v. Kwon, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) .......................... 7, 8, 9, 20, 21

iv

# TABLE OF AUTHORITIES

PAGE

Morgan v. Speak Easy, LLC, No. 05 C 5795, 2007 U.S. Dist LEXIS 69589
(N.D. Ill. Sep. 20, 2007)..........................................................................12

Pachter v. Bernard Hodes Group, Inc., No. 03 Civ. 10239 (RPP), 2005 U.S. Dist. LEXIS
18005 (S.D.N.Y. Aug. 25, 2005)..............................................................14

Pavia v. Around the Clock Grocery, Inc., No. 03 CV 6465 (ERK), 2005 U.S. Dist. LEXIS
43229 (E.D.N.Y. Nov. 15, 2005)..............................................................20

Perero v. Food Jungle, Inc., Nos. 05 CV 4347 (JG), 05 CV 5169 (JG), 05 CV 5170 (JG),
2006 U.S. Dist. LEXIS 73409 (S.D.N.Y. Aug. 7, 2006).........................20

Ramirez v. CSJ & Co., No. 06 Civ. 13677 (LAK), 2007 U.S. Dist. LEXIS 28901
(S.D.N.Y. Apr. 3, 2007)..........................................................................17

Reich v. Chez Robert, Inc., 28 F.3d 401 (3d Cir. 1994)..............................4, 5

Reich v. S. New Eng. Telecommc'ns Corp., 121 F.3d 58 (2d Cir. 1997)..........8, 11, 18

Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253 (2d Cir. 1999)..............21

Richard v. Marriott Corp., 549 F.2d 303 (4th Cir. 1977)..............................5

Rivera v. Ndola Pharm. Corp., 497 F. Supp. 2d 381 (E.D.N.Y. 2007)..........10

Rivera v. Brickman Group, Ltd., Civ. No. 05-1518, 2008 U.S. Dist. LEXIS 1167 (E.D.
Pa. Jan. 7, 2008)....................................................................................14

Tlacoapa v. Carregal, 386 F. Supp. 2d 362 (S.D.N.Y. 2005).......................20

Tran v. Alphonse Hotel Corp., 281 F.3d 23 (2d Cir. 2002).........................11

United States on behalf of Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co.,
889 F.2d 1248 (2d Cir. 1989)..................................................................19

Unterreiner v. Volkswagen of Am., Inc., 8 F.3d 1206 (7th Cir. 1993)..........18

Valdez v. United States, No. 06-1333-cv, 2008 U.S. App. LEXIS 4392
(2d Cir. Feb. 29, 2008)..........................................................................16

Veltri v. Bldg. Serv. 32b-J Pension Fund, 393 F.3d 318 (2d Cir. 2004)......16

Yang v. ACBL Corp., 427 F. Supp. 2d 327 (S.D.N.Y. 2005).....................7, 11

# TABLE OF AUTHORITIES

PAGE

Zheng v. Liberty Apparel Co., 355 F.3d 61 (2d Cir. 2003) ............................................ 22

**Statutes, Rules, and Regulations**

29 U.S.C. § 201 et seq. ...................................................................................................... 1

29 U.S.C. § 203(d) ........................................................................................................... 21

29 U.S.C. § 203(g) ............................................................................................................. 7

29 U.S.C. § 203(m) ..................................................................................................... 4, 12

29 U.S.C. § 211(c) ........................................................................................................... 11

29 U.S.C. § 216(b) ........................................................................................................... 18

29 U.S.C. § 255(a) ........................................................................................................... 14

29 U.S.C. § 260 .......................................................................................................... 18, 19

29 C.F.R. § 516.4 ............................................................................................................. 16

29 C.F.R. § 516.5 ............................................................................................................. 11

29 C.F.R. § 516.27(a) ...................................................................................................... 12

29 C.F.R. § 531.3(a) ........................................................................................................ 12

29 C.F.R. § 531.3(b) ........................................................................................................ 12

29 C.F.R. § 531.3(d)(2) ................................................................................................... 14

29 C.F.R. § 531.32(c) ...................................................................................................... 14

29 C.F.R. § 531.35 ..................................................................................................... 13, 14

29 C.F.R. § 785.11 ............................................................................................................. 8

29 C.F.R. § 785.13 ............................................................................................................. 8

29 C.F.R. § 785.15 ............................................................................................................. 7

29 C.F.R. § 785.16(a) ........................................................................................................ 8

N.Y. C.P.L.R. § 5001 ...................................................................................................... 21

## TABLE OF AUTHORITIES

PAGE

N.Y. C.P.L.R. § 5004 ............................................................................................ 21

N.Y. Lab. Law § 2(7) ............................................................................................. 7

N.Y. Lab. Law § 195(4) ......................................................................................... 11

N.Y. Lab. Law § 198(1-a) ...................................................................................... 20

N.Y. Lab. Law § 198(3) ......................................................................................... 18

N.Y. Lab. Law § 650 .............................................................................................. 6

N.Y. Lab. Law § 652(4) .......................................................................................... 6

N.Y. Lab. Law § 661 .............................................................................................. 11

N.Y. Lab. Law § 663(1) ......................................................................................... 20

N.Y. Lab. Law § 663(3) ......................................................................................... 18

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3 ................................................... 6

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.4 ................................................... 6

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 ................................................... 6

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.9 ................................................... 12

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.1(a) .............................................. 11

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.2 ................................................... 12

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.5(b) .............................................. 14

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.6 ................................................... 8

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.11 ................................................. 6

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ................................................... 6

Fed. R. Civ. P. 8(c)(1) ........................................................................................... 19

Plaintiffs Fernando Lopez, Adolfo Lopez, Venancio Galindo, and Gil Santiago ("Plaintiffs") respectfully submit this Pretrial Memorandum of Law in accordance with the pretrial practices and procedures of this Court.

## PRELIMINARY STATEMENT

Plaintiffs have been employed at various times since 2000 as delivery workers at either of two Upper West Side restaurants doing business under the name Flor de Mayo. This case is about the admitted failure of Defendants—the two corporations that each own one of the restaurants and three family members responsible for managing the restaurants—to compensate Plaintiffs for their work in accordance with state and federal law. It is undisputed that Plaintiffs are protected by and Defendants are subject to both the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and New York Labor Law. It is also undisputed that Defendants paid Plaintiffs as little as $1.25 per hour for their work and at no time, until April 2007, paid Plaintiffs the legally required minimum wage. It is also undisputed that at no time, until April 2007, did Defendants pay Plaintiffs the legally required time-and-a-half for hours worked in excess of 40 per week.

The only issues for judicial resolution in this case concern not whether Defendants have violated FLSA and New York Labor Law, but the extent to which they have done so. The most important contested issue is the duration of Plaintiffs' employment at Flor de Mayo. The three Plaintiffs whose hours are in dispute will testify that they in fact began working at Flor de Mayo prior to 2003, and one, Fernando Lopez, will produce evidence of his employment in the form of letters created and signed by Defendant Dennis Chu. Nevertheless, and despite having violated state and federal law by failing to create or preserve employment records probative of the

issue—thereby taking upon themselves the burden of proof on this issue—Defendants will claim that none of the Plaintiffs worked for them until 2003.

The second principal category of issues concerns what offsets, if any, Defendants are entitled to against their minimum-wage obligations. Though Plaintiffs received tips from customers, Defendants may only count those tips against Plaintiffs' wages if they informed Plaintiffs that such a practice was permitted under federal law. Defendants, however, admit that they failed to do so. Defendants also seek to count against the minimum wage the cost of meals made available to Plaintiffs, despite not having kept any records of the actual cost of those meals or provided Plaintiffs with statements each pay period indicating the amount claimed as an allowance. As to both the tip credit and the meal credit, Defendants have failed to abide by the laws and regulations governing the terms of those deductions, and thus they are not entitled to them. Defendants also seek to count against the hours worked by Plaintiffs purported afternoon "breaks" during which Plaintiffs made deliveries, performed other tasks in the restaurant, and remained at the restaurants for Defendants' benefit.

The third category of issues concerns what additional damages Plaintiffs are owed, beyond the minimum wage and overtime pay. Under New York law, Plaintiffs are entitled to "spread of hours" compensation because their shifts, lasting 11 or 12 hours each, ended each day more than 10 hours after they began. Under federal law, they are entitled to reimbursement for the purchase and maintenance of their bicycles, "tools of the trade" which Defendants concede Plaintiffs were required to have in order to make deliveries. Finally, under both state and federal law, Plaintiffs are entitled to liquidated damages and prejudgment interest, on top of their unpaid wages. Defendants may try to assert a "good faith" defense to liquidated damages under FLSA, but they waived that defense by failing to plead it in their Answer. Even if they had, however,

the defense would not be viable given Defendants' acknowledged failure to take affirmative steps to determine their FLSA obligations.

The fourth category of issues concerns the statute of limitations for Plaintiffs' FLSA claims. Under FLSA, the limitations period for willful violations of the Act is three years. Given Defendants' extensive experience in and knowledge of the restaurant industry, and the resulting implausibility of their claim not to have been aware that their employees were covered by the minimum wage, there is no doubt the Defendants' violations were willful. Moreover, the statute should be tolled for the entirety of Plaintiffs' employment because Defendants failed to post any notice of employees' rights to the minimum wage and overtime, an admitted violation of federal law that deprived Plaintiffs of the knowledge needed to have brought suit earlier.

The final issue is that of Defendants' joint and several liability for Plaintiffs' damages. It is undisputed that each individual defendant was Plaintiffs' "employer," as that term is understood under federal law. Accordingly, these employers—each of whom had the right to hire, fire, determine the wages of, and set the terms and conditions of employment for each Plaintiff—should be individually liable for their collective failure to abide by the law.

## ARGUMENT

## I.    PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW

### A.    Plaintiffs Are Entitled to the Ordinary Minimum Wage and Overtime Compensation Under FLSA

It is undisputed in this case that, pursuant to FLSA, Plaintiffs are entitled to the minimum wage and overtime compensation. The parties disagree, however, as to whether Defendants owe Plaintiffs for the full minimum wage or for a lesser amount in light of the tips earned by Plaintiffs. FLSA allows employers to pay tipped employees at an hourly rate less than the

3

minimum wage if the employees' wages and tips, added together, meet or exceed the minimum wage. 29 U.S.C. § 203(m). To take advantage of this tip credit provision, however, an employer must first inform the employee of the statutory requirements related to the tip credit and allow the employee to keep all tips received, with an exception made for the pooling of tips among employees who regularly receive tips. Id. "The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage." Chung v. New Silver Palace Rest., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (citing Reich v. Chez Robert, Inc., 28 F.3d 401, 404 (3d Cir. 1994); Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1323 (1st Cir. 1992)).

An employer bears the burden of showing that it has satisfied the notice requirement of the tip credit provision by, "for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." Chan v. Sung Tue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 U.S. Dist. LEXIS 7770, at *52 (S.D.N.Y. Feb. 1, 2007). In finding that a restaurant had failed to provide proper notice in Chan, Judge Lynch observed that the restaurant did not post any notice for a long period of time after it opened; posted the notice in English, a language few of the plaintiffs could read; and posted the notice "in a relatively inconspicuous area." Id.

Other cases outside the Second Circuit demonstrate that, at a bare minimum, employers must give "notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations." Tango's Restaurant, 969 F.2d at 1322; see also Kilgore v. Outback Steakhouse, 160 F.3d 294, 298 (6th Cir. 1998) (holding that "an employer must inform its employees of its intent to take a tip credit toward the employer's minimum wage obligation"). No matter how notice of the tip credit provision is defined, it incorporates

acknowledgement and understanding of the employer's minimum wage obligations. Several courts of appeals have observed that where this requirement is not met, lower courts lack discretion to count tips earned by employees against their recoverable damages. See, e.g., Tango's Restaurant, 969 F.2d at 1323 ("If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide."); Chez Roberts, 28 F.3d at 404 ("When the employer has not notified employees that their wages are being reduced pursuant to the Act's tip-credit provision, the district court may not equitably reduce liability for back wages to account for tips actually received."); Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 467-68 (5th Cir. 1979) (holding that where it was agreed that a restaurant did not inform waiters that a tip-credit was being deducted from their wages, "the district court properly found that the employees were entitled to the full minimum wage for every hour" at issue); Richard v. Marriott Corp., 549 F.2d 303, 305 (4th Cir. 1977) (disallowing partial tip credit for employer based on "a vague sense of fairness").

In this case, Defendants freely admit that they did not give Plaintiffs notice of the tip credit provision for the period covered by the Amended Complaint. When they were hired, Plaintiffs were told that most of their earnings would come from tips, but were not told about the minimum wage or that Defendants would count some of those tips against their minimum wage obligations. In addition, it is undisputed that notices regarding the minimum wage were not posted in either restaurant until 2007. In light of the case law discussed above, because Defendants told Plaintiffs only that the majority of their wages would come from tips—not that a portion of their tips would be counted against the federally mandated minimum wage, the subject of which they received no information—they have not satisfied the statute. Accordingly,

Plaintiffs did not receive adequate notice of the tip credit provision and are entitled to recover the full difference between the amount of wages paid and the minimum wage.

**B.    Plaintiffs Are Entitled to the "Tipped Service Employee" Minimum Wage and Overtime Compensation Under New York Labor Law**

Plaintiffs are entitled to a tipped service employee minimum wage under New York Labor Law.  See N.Y. Lab. Law § 652(4); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.4. Plaintiffs are also entitled to overtime compensation at a rate of one-and-one-half times the ordinary minimum wage (minus a tip allowance) for each hour worked per week in excess of forty.  See N.Y. Lab. Law § 650; N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3.

**C.    Plaintiffs Are Also Entitled to Spread-of-Hours Compensation**

New York Labor Law provides that any restaurant employee whose workday is longer than ten hours "shall receive one hour's pay at the basic minimum hourly wage rate."  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7.[1]  This so called "spread of hours" is defined as the number of hours from the time an employee starts his workday until the time the employee finishes his workday, including both working time and non-working time (e.g., lunch breaks or off-time between split shifts).  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.11.  Both the regulations and cases make clear that an employee is entitled to an extra hour's pay irrespective of whether the employee's spread of hours includes non-working time.  See, e.g., Chan, 2007 U.S. Dist. LEXIS 7770, at *60 (explaining that restaurant employees are entitled to spread of hours for each workday in which "(a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur") (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4).

---

[1] For tipped employees like Plaintiffs, this extra hour's pay is at the ordinary New York minimum wage rate—not the reduced rates at which their base and overtime salaries may be calculated.  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7.

New York federal courts have routinely concluded that a plaintiff can recover spread-of-hours wages in addition to their federal or state minimum wage and overtime claims. See, e.g., Yang v. ACBL Corp., 427 F. Supp. 2d 327, 343 (S.D.N.Y. 2005) (plaintiffs recovered overtime and liquidated damages under FLSA and New York law, in addition to spread-of-hours damages); see also Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 U.S. Dist. LEXIS 35, at *15 (S.D.N.Y. Jan. 7, 2004).

In this case, Defendants concede that Plaintiffs were not paid spread-of-hours wages, even though, until April 2007, their shifts lasted either eleven or twelve hours. Plaintiffs are therefore entitled to spread-of-hours compensation for each day they worked at Flor de Mayo.

**D.      Plaintiffs Are Entitled to Compensation for Every Hour of Their Shifts, Including Wait Time**

FLSA and New York Labor Law both require employers to compensate employees for all work "suffered or permitted," including "wait time." See Moon v. Kwon, 248 F. Supp. 2d 201, 228 (S.D.N.Y. 2002) (citing 29 U.S.C. § 203(g); N.Y. Lab. Law § 2(7)). As explained by the United States Department of Labor:

> A stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, a fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while waiting for machinery to be repaired are all working during their periods of inactivity. . . .  [The wait time is work time because] the employee is unable to use the time effectively for his own purposes.  It belongs to and is controlled by the employer.  In all of these cases waiting is an integral part of the job.  The employee is engaged to wait.

29 C.F.R. § 785.15; see also Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944) ("Readiness to serve may be hired, quite as much as service itself . . . .").  An employee is off duty, and therefore not entitled to compensation, only when he is "completely relieved from duty" for a

period "long enough to enable him to use the time effectively for his own purposes." 29 C.F.R. § 785.16(a); see also Reich v. S. New Eng. Telecommc'ns Corp., 121 F.3d 58, 65-66 (2d Cir. 1997) (holding that workers were still on duty because they were required to stay on site to perform passive safety and security duties during lunch breaks). The employee must be "definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived." 29 C.F.R. § 785.16(a) (emphasis added).[2]

An employer seeking to avoid compensating off-duty employees must ensure that its employees are, in fact, heeding the command to stop work. See 29 C.F.R. § 785.11. The Second Circuit recently reaffirmed this point in ordering an employer that forbade its employees from working overtime to provide back pay for all overtime work actually performed. Chao v. Gotham Registry, Inc., 514 F.3d 280 (2d Cir. 2008). The court held that "[a]n employer who has knowledge [either actual or constructive] that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance . . . even where the employer does not desire the employee to work." Id. at 288. The employer "cannot sit back and accept the benefits without compensating for them." Moon, 248 F. Supp. 2d at 228 (quoting 29 C.F.R. § 785.13).

Defendants claim they told Plaintiffs that only one delivery worker was required to remain at the restaurant during the slow time in the afternoon, between the busy lunch and dinner periods. This claim, which Plaintiffs adamantly dispute, is insufficient to establish that Plaintiffs were off-duty during afternoon hours because it is not a definite command that refers to a definite time period. Further, Defendants have never asserted that three of the four Plaintiffs

---

[2] The New York State Department of Labor similarly defines working time as "time worked or time of permitted attendance, including waiting time, whether or not work is provided, and time spent in traveling as part of the duties of the employee." N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.6.

actually stopped work during any time period. It is undisputed that Defendants' delivery service operated throughout the afternoon, that more than one delivery person might make deliveries during that time period on any given day, and that delivery workers performed other tasks during that time at the restaurant, including, but not limited to, cleaning sidewalks, mopping, cleaning bathrooms, stocking boxes, and unpacking boxes. Defendant Dennis Chu has conceded that the restaurant kept employees around during slow times to ensure that its patrons were provided for.

On similar facts, a Missouri district court ruled against a restaurant that had a posted policy that "[w]hen you are scheduled in at one certain time and not needed you may stay in the breakroom or leave." Brock v. DeWitt, 633 F. Supp. 892, 893 (W.D. Mo. 1986). The court in DeWitt acknowledged that the employees—almost exclusively high-school students who may have been unable to find better work—spent time fraternizing, enjoying free food and beverages, or listening to music in their cars when not needed, but reasoned that the workers at all times "were able and willing to perform their assigned duties" for which demand fluctuated "depending on the days of the week, time of day, weather conditions, and other factors." Id. at 896. The court concluded that "[i]t was to the employer's benefit to have a ready and willing work force available when customers arrived expecting speedy and efficient food service." Id.; see also Dole v. Bishop, 740 F. Supp. 1221, 1226-27 (S.D. Miss. 1990) (finding that restaurant employees' non-work time was compensable where "[m]ost employees remained at the restaurant . . . and were subject to interruptions and recall to employment tasks"); cf. Jiao v. Chen, No. 03 Civ. 165 (DF), 2007 U.S. Dist. LEXIS 96480, at *39-40 (S.D.N.Y. Mar. 30, 2007) (finding that hotel employee worked 162.5 hours per week despite being able to sleep and engage in personal activities); Moon, 248 F. Supp. 2d at 230 ("Even if Moon did spend some

9

time during the evenings socializing in the hotel while waiting for assignments, that is not sufficient to render that waiting time noncompensable.").

Plaintiffs are entitled to compensation for every hour they worked, not just those that were profitable for the restaurant. Defendants engaged Plaintiffs to wait for any deliveries that were placed during the day, benefited from that labor, and were fully aware that Plaintiffs were waiting at the restaurant for delivery orders and completing non-delivery tasks. Having suffered or permitted this labor, Defendants may not now attempt to escape liability through after-the-fact protestations that they never wanted the work performed in the first place or would have acted differently had they known that delivery workers were required to be paid the minimum wage. See Gotham Registry, 514 F.3d at 288.

### E.      Plaintiffs May Establish Their Wages and Hours Through Testimony at Trial

An employee seeking unpaid wages under FLSA bears the initial burden of proving that he performed work for which he was not properly compensated. However, courts are mindful of the fact that "it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). It is well established that where an employer has failed to keep such records and an employee cannot provide adequate substitutes, the employee can satisfy his burden if he "proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. In the absence of documentary evidence, an employee can meet this burden by relying on his recollection alone. See, e.g., Rivera v. Ndola Pharm. Corp., 497 F. Supp. 2d 381,

10

388 (E.D.N.Y. 2007); <u>ACBL Corp.</u>, 427 F. Supp. 2d at 335; <u>see also</u> <u>Tran v. Alphonse Hotel Corp.</u>, 281 F.3d 23, 31 (2d Cir. 2002) (finding burden satisfied by employee's testimony, which was corroborated by that of a co-worker).   Having done so, the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."   <u>Anderson</u>, 328 U.S. at 688.   If the employer fails to do so, the court can award damages to the employee, even though the award may only approximate his actual damages.  <u>Id.</u>; <u>accord</u> <u>S. New Eng. Telecommc'ns Corp.</u>, 121 F.3d at 67.[3]

     In this case, Defendants admit they have failed to create and preserve the payroll records from which the Court could have determined with precision the amounts by which Plaintiffs were underpaid.   Under both federal and state law, all employers are required to maintain such records for at least three years.   <u>See</u> 29 U.S.C. § 211(c); 29 C.F.R. § 516.5; N.Y. Lab. Law § 195(4).   In New York, furthermore, employers in the restaurant industry are required to maintain such records for six years.   N.Y. Lab. Law. § 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.1(a).   Accordingly, the <u>Anderson</u> burden-shifting rule applies.   Plaintiffs will establish the hours they worked and the wages paid to them through their testimony, stipulations, and the limited documentary evidence they possess.   From this evidence, the Court will be able to draw a just and reasonable inference as to the amount by which Plaintiffs were improperly underpaid.   Defendants, lacking any evidence as to the precise number of hours of work

---

[3] Courts have applied <u>Anderson</u> to suits under New York Labor Law, holding that if an employer fails to maintain proper records, the extent of the underpayment may be proved by other evidence, including the employee's testimony.  <u>See</u> <u>Brown v. Tomcat Elec. Sec., Inc.</u>, No. 03 Civ. 5175 (FB) (JO), 2007 U.S. Dist. LEXIS 63542, at *19 (E.D.N.Y. Aug. 27, 2007); <u>Hy-Tech Coatings v. N.Y. State Dep't of Labor</u>, 226 A.D.2d 378, 379 (2d Dep't 1996).

performed by Plaintiffs, will be unable to rebut Plaintiffs' evidence or the inferences to be drawn from it.

## II.    DEFENDANTS MAY NOT TAKE A MEAL ALLOWANCE

FLSA allows an employer to pay a portion of an employee's minimum wage in the form of a non-cash benefit, such as meals.  See 29 U.S.C. § 203(m).  This allowance is limited to the meals' "reasonable cost," which has been interpreted under FLSA regulations to be "not more than the <u>actual</u> cost to the employer."  29 C.F.R. § 531.3(a) (emphasis added).  Reasonable cost may not include a profit.  See 29 C.F.R. § 531.3(b).  An employer, if taking such a meal deduction, must preserve records to substantiate the associated costs.  29 C.F.R. § 516.27(a).  Similarly, New York law requires employers to furnish employees with a statement each pay period setting forth the wages and allowances claimed, including the meal allowance.  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.2.  Moreover, New York law caps the amount of the allowance employers can claim for meals provided to employees.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.9.

Courts that have endeavored to determine a meal allowance have set a high bar, placing the burden with the employer to prove that the claimed allowance represents the reasonable cost of meals furnished.  Herman v. Collis Foods, Inc., 176 F.3d 912, 920 (6th Cir. 1999) (affirming meal allowance where defendant kept contemporaneous records and offered expert report and "records of the cost of food that it purchased, along with records of its other operating costs").  "'An employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the record-keeping provisions of FLSA,' does not satisfy this burden of proof."  Id. (quoting Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 475 (11th Cir. 1982)); see also Morgan v. Speak Easy, LLC, No. 05 C 5795, 2007 U.S. Dist LEXIS 69589, at *56-57 (N.D. Ill. Sep. 20,

2007) (rejecting claimed meal allowance where defendant failed to produce documentary support); <u>Bishop</u>, 740 F. Supp. at 1227 (holding that without records of meal credits, an employer that arbitrarily set costs of employee meals at half their retail price could not take meal allowance).

In this case, Defendants have never, either before or after coming into compliance with FLSA, taken a meal allowance, given employees notice thereof, or kept records to substantiate the cost of providing meals. Most troubling, Defendants have not produced any documents (e.g., records demonstrating the current cost of providing employees with meals) that could be meaningfully analyzed and tested by Plaintiffs. In short, there is simply no authority to support Defendants' apparent position that an employee's wages may be reduced on the basis of estimations made for the first time at trial.

### III.  PLAINTIFFS ARE ENTITLED TO COMPENSATION FOR THE PURCHASE AND MAINTENANCE OF BICYCLES UNDER FLSA AND NEW YORK LABOR LAW

FLSA requires employers to pay for the purchase and maintenance of necessary tools of the trade. Regulations promulgated under FLSA make clear that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'"  29 C.F.R. § 531.35. The regulations state:

> If it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

<u>Id.</u> (emphasis added).[4]  Accordingly, if such expenses are borne by the employee, they are "deducted from the cash wage to determine compliance with the FLSA minimum." <u>Rivera v. Brickman Group, Ltd.</u>, Civ. No. 05-1518, 2008 U.S. Dist. LEXIS 1167, at *26 (E.D. Pa. Jan. 7, 2008); <u>see also</u> <u>Arriaga v. Fla. Pac. Farms, L.L.C.</u>, 305 F.3d 1228, 1237 & n.11 (11th Cir. 2002). Federal regulations place "tools of the trade" into the category of expenses that are "primarily for the benefit or convenience of the employer." 29 C.F.R. §§ 531.3(d)(2), 531.32(c).

In this case, Defendants concede that they never paid or reimbursed Plaintiffs for the purchase or maintenance of bicycles, even though all delivery workers were required to use bicycles to make deliveries.  Since Plaintiffs—already paid below minimum wage—were required to pay for and maintain bicycles as a condition of their employment, Defendants are liable for all such costs.

## IV.  PLAINTIFFS ARE ENTITLED TO RECOVER UNPAID WAGES UNDER FLSA FOR THE ENTIRETY OF THEIR EMPLOYMENT

### A.  The Applicable FLSA Statute of Limitations Should Be Three Years

The statute of limitations under FLSA is ordinarily two years, but may be extended to three years if the cause of action arises out of a willful violation of the Act.  29 U.S.C. § 255(a). The Supreme Court has held that a willful violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988).

Defendants claim not to have known that they had to pay delivery workers the minimum wage until April 2007, when they brought their restaurants into compliance.  Such ignorance

---

[4] Defendants' obligations under New York Labor Law are similar.  <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.5(b) ("The minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer."); <u>Pachter v. Bernard Hodes Group, Inc.</u>, No. 03 Civ. 10239 (RPP), 2005 U.S. Dist. LEXIS 18005, at *21-23 (S.D.N.Y. Aug. 25, 2005).

may permit a finding of a willful violation so that the statute of limitations is set at three years. See Herman v. RSR Sec. Servs., Ltd., 172 F.3d 132, 141-42 (2d Cir. 1999). Defendant Phillip Chu has been working in the New York restaurant industry, either as a waiter or owner, since 1973, and claims to have consulted with other restaurant owners regarding workers' wages and to have compared the wages paid by different restaurants. Nevertheless, he claims to know nothing about the minimum wage or overtime. His son Dennis, who attended two years of college at SUNY-Albany and has lived his entire life in the United States, makes the same claim. Defendant Jose Tso, who has been working in the New York restaurant industry since 1979, concedes that he knew of the existence of a minimum wage, yet took no steps to learn how the minimum wage law might apply to his employees. Tso has also acknowledged that among people in the restaurant business, himself included, the market rate of pay for different types of restaurant workers is "common knowledge," yet he claims not to have known that restaurant workers are covered by minimum wage and overtime laws. Defendants collectively have over seventy years of experience in the heavily regulated restaurant industry, yet claim to have never taken any steps to learn of one of the law's most basic requirements. These facts alone demonstrate an utter and reckless disregard for Flor de Mayo's legal obligations to its workers. See Breen v. Concrete by Wagner, Inc., No. 98 C 3611, 1999 U.S. Dist. LEXIS 17401, at *39-41 (N.D. Ill. Nov. 3, 1999) (granting summary judgment against defendant that knew of FLSA, "was engaged in business as a concrete company, hiring concrete laborers," but "never investigated the basic content and requirements of the FLSA").

### B.    The FLSA Statute of Limitations Should Be Equitably Tolled

The doctrine of equitable tolling "calls for the court to extend the statute of limitations beyond the time of expiration." Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d

258, 264 (2d Cir. 1990). "The essence of the doctrine is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action," especially where a defendant's conduct "concealed from the plaintiff the existence of the cause of action." Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985) (citations and internal quotation marks omitted). The Second Circuit has stated that, under these circumstances, equitable tolling is a "matter of fairness." Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir. 1985). The Second Circuit recently reaffirmed that fraudulent concealment of critical facts by the defendant is not necessary to an equitable tolling claim, and that equitable tolling may be appropriate where the defendant has violated some regulation requiring it to inform the plaintiff of his rights. See Valdez v. United States, No. 06-1333-cv, 2008 U.S. App. LEXIS 4392, at *24-27 (2d Cir. Feb. 29, 2008) (citing Veltri v. Bldg. Serv. 32b-J Pension Fund, 393 F.3d 318 (2d Cir. 2004)).

Regardless of whether it is set at two or three years, the statute of limitations for Plaintiffs' claims under FLSA should be equitably tolled to cover the full period of Plaintiffs' employment by Defendants because Defendants failed to post a notice of workers' rights in the workplace, as required by law, and, as a result, Plaintiffs were unaware of their rights under FLSA until very shortly before this suit was commenced. Under federal law, any employer subject to FLSA's minimum wage provisions must "post and keep posted a notice explaining the Act . . . in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4. It is undisputed that Defendants failed to do so. Moreover, in light of this failure, Plaintiffs will testify that they were unaware of their rights to a minimum wage and overtime pay until shortly before bringing this lawsuit.

16

In <u>Ramirez v. CSJ & Co.</u>, No. 06 Civ. 13677 (LAK), 2007 U.S. Dist. LEXIS 28901 (S.D.N.Y. Apr. 3, 2007), Judge Kaplan explained why equitable tolling is appropriate under precisely these circumstances:

> The . . . plaintiffs in this case were employed to make deliveries to customers for a delicatessen offering take-out service. Anyone who has lived in New York in recent decades knows, and plaintiffs in any case would be entitled to prove, that such jobs are filled by individuals at the bottom of the economic ladder, often immigrants with few skills and limited education. The ability of most to learn of their legal rights under the complex web of labor and social legislation that governs the modern workplace is not great. Thus, employers that fail to post the required notices take advantage of the defenseless in a very real way, whether out of venality or otherwise. In any case, they frustrate legislative objective of protecting those most in need of protection.

<u>Id.</u> at *7. In accord with Judge Kaplan's reasoning, many courts have recognized that equitable tolling of the statute of limitations is appropriate in FLSA cases under similar circumstances. <u>See, e.g.</u>, <u>id.</u> at *7-8 (denying motion to dismiss so as to permit plaintiffs to prove equitable tolling at trial); <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) (allowing plaintiffs discovery on the applicability of the equitable tolling doctrine before deciding what the statute of limitations is and certifying class of plaintiffs who had worked for defendant over a six-year period); <u>Baba v. Grand Central P'ship</u>, No. 99 Civ. 5818 (TPG), 2000 U.S. Dist. LEXIS 17876, at *4-5 (S.D.N.Y. Dec. 8, 2000) (denying defendant's summary judgment motion as to plaintiff's equitable tolling claim where there was conflicting evidence of whether defendants posted required minimum wage notice); <u>see also, e.g.</u>, <u>Cortez v. Medina's Landscaping</u>, No. 00 C 6320, 2002 U.S. Dist. LEXIS 18831, at *20 (N.D. Ill. Sept. 30, 2002); <u>Henchy v. City of Absecon</u>, 148 F. Supp. 2d 435, 439 (D.N.J. 2001); <u>Blake v. CMB Constr.</u>, Civil No. 90-388-M, 1993 U.S. Dist. LEXIS 21181, at *16-17 (D.N.H. Mar. 30, 1993); <u>Kamens v. Summit Stainless, Inc.</u>, 586 F. Supp. 324, 328 (E.D. Pa. 1984).

The conclusion that the statute of limitations for Plaintiffs' FLSA claims are subject to equitable tolling is buttressed by the fact that many courts have likewise tolled the limitations period for other employment-related statutes where employers have, as here, failed to post the notice of employees' rights as required by law.  See, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 (1st Cir. 2005); EEOC v. Ky. State Police Dep't, 80 F.3d 1086, 1096 (6th Cir. 1996); Unterreiner v. Volkswagen of Am., Inc., 8 F.3d 1206, 1213 (7th Cir. 1993); Callowhill v. Allen-Sherman-Hoff Co., 832 F.2d 269, 272 (3d Cir. 1987); English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987).

### C.    The Statute of Limitations Under New York Labor Law Is Six Years

The statute of limitations under New York law for wage payment violations is six years. N.Y. Lab. Law §§ 198(3), 663(3).

## V.    PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES UNDER FLSA OR LIQUIDATED DAMAGES AND PREJUDGMENT INTEREST UNDER NEW YORK LABOR LAW

### A.    FLSA Liquidated Damages

An employer who violates FLSA is liable for the unpaid wages and an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  The employer may not be liable for liquidated damages if it demonstrates that its actions were in good faith and that it had reasonable grounds for believing its actions or omissions did not violate FLSA.  29 U.S.C. § 260.  The Second Circuit has explained that "the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. . . .  The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and 'double damages are the norm, single damages the exception.'"  S. New Eng. Telecommc'ns Corp., 121 F.3d at 71 (citations and internal quotation marks omitted); see also Brock v. Wilamowsky, 833 F.2d 11, 20 (2d Cir.

1987) ("The Act does not authorize the court to decline to award liquidated damages, in whole or in part, unless the employer has established its good-faith, reasonable-basis defense.").

Under the Federal Rules of Civil Procedure, a party "must affirmatively state any avoidance or affirmative defense" in a responsive pleading. Fed. R. Civ. P. 8(c)(1). The "failure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." United States on behalf of Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1253 (2d Cir. 1989) (citations and internal quotations omitted); see also Doubleday & Co. v. Curtis, 763 F.2d 495, 503 (2d Cir. 1985) ("[Rule 8(c)] is intended to notify a party of the existence of certain issues, and its mandatory language has impelled us to conclude that a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation.").

Rule 8 of the Federal Rules of Civil Procedure provides a long, but non-exclusive, list of affirmative defenses that must be pleaded in an answer. Fed. R. Civ. P. 8(c)(1). The good-faith defense, by its language, is one such affirmative defense that the defendant must plead and prove, as it imposes on the employer the burden of "show[ing] to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of" FLSA. 29 U.S.C. § 260. Accordingly, Defendants' failure to raise this defense in their Answer constitutes a waiver, and the defense may not be asserted for the first time at trial.

The good-faith defense to liquidated damages, even if properly asserted, would undoubtedly fail on the facts as admitted by Defendants. To establish good faith, an employer must provide "plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it." Wilamowsky, 833 F.2d at 19; accord RSR Sec. Servs., 172

19

F.3d at 142 ("To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them.").  Because of the requirement that an employer take "active steps" to determine its obligations under the law, it is well established that "[i]gnorance of FLSA requirements is insufficient to establish good faith."  Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); accord Perero v. Food Jungle, Inc., Nos. 05 CV 4347 (JG), 05 CV 5169 (JG), 05 CV 5170 (JG), 2006 U.S. Dist. LEXIS 73409, at *28 (S.D.N.Y. Aug. 7, 2006); Pavia v. Around the Clock Grocery, Inc., No. 03 CV 6465 (ERK), 2005 U.S. Dist. LEXIS 43229, at *25 (E.D.N.Y. Nov. 15, 2005); see also RSR Sec. Servs., 172 F.2d at 142 (finding good faith defense not satisfied "where the employer has knowledge of his pay practices but is ignorant of the requirements of the FLSA").

In this case, Defendants claim that they were not aware of the minimum wage, or its specifics, until April 2007.  There is no evidence that Defendants made any effort to ascertain their responsibilities under FLSA, and if Defendants were unaware of the law's existence, then it would be impossible for them to demonstrate that they had a reasonable belief that they were in compliance with the law.  Since Defendants' claims of ignorance are inconsistent with a finding of good faith, such an affirmative defense fails as a matter of law.

### B.    New York Labor Law

New York Labor Law allows a worker to recover 25 percent of his unpaid wages as liquidated damages where his employer's violation was willful.  N.Y. Lab. Law §§ 198(1-a), 663(1).  Since, as discussed supra, Defendants' wage and hour violations were willful, Plaintiffs are entitled to liquidated damages under New York Labor Law.  See Moon, 248 F. Supp. 2d at 235.  ("[T]he standard for willfulness for purposes of the FLSA statute of limitations does not

appreciably differ from the standard applicable under New York law when determining whether to award liquidated damages . . . .").

Plaintiffs are also entitled to prejudgment interest, at a statutory rate of 9 percent, on any award of damages under New York Labor Law.  See N.Y. C.P.L.R. §§ 5001, 5004.  This prejudgment interest may be awarded in addition to any liquidated damages that the Court may award.  See Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 265 (2d Cir. 1999).

## VI.    EACH DEFENDANT IS AN EMPLOYER JOINTLY AND INDIVIDUALLY LIABLE FOR UNPAID WAGES

FLSA and New York Labor Law both impose personal liability on employers for wage and hour violations.  See Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003).  Under FLSA, the definition of an "employer" who may be held personally liable includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  This definition of "employer" is to be broadly construed. See RSR Sec. Servs., 172 F.3d at 139 ("The Supreme Court has emphasized the expansiveness of the FLSA's definition of employer . . . .   Above and beyond the plain language . . . the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact' in the national economy.").[5]  Thus, FLSA permits more than one person to be held liable as an employer, see Falk v. Brennan, 414 U.S. 190, 195 (1973), and it does not matter that an individual "may have shared or delegated operational control to other[s] . . . or exercised that control infrequently,"  Moon, 248 F. Supp. 2d at 237.

---

[5] New York law takes a similarly broad approach to personal liability.  Jiao, 2007 U.S. Dist. LEXIS 96480, at *30-31 n.12 ("[C]ourts have interpreted the definition of 'employer' under New York Labor Law coextensively with the definition used by the FLSA.").

The Second Circuit employs an "economic reality" test to determine whether a defendant is an employer for FLSA purposes. <u>RSR Sec. Servs.</u>, 172 F.3d at 139. The court examines whether the defendant has the power to hire and fire the employees, supervises or controls employee work schedules or conditions of employment, determines the rate and method of payment, or maintains employment records. <u>Id.</u> This list is neither exclusive nor exhaustive, as a defendant need not fit all the above factors to qualify as an employer under the FLSA; no one factor is dispositive, and any other relevant factor may also be considered. <u>See</u> <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 71 (2d Cir. 2003). The Second Circuit has also warned that a "mechanical application of the test is to be avoided." <u>Brock v. Superior Care, Inc.</u>, 840 F.2d 1054, 1059 (2d Cir. 1988).

In this case, Defendants have stipulated that they were Plaintiffs' employers. Moreover, the parties agree that both Flor de Mayo restaurants are wholly owned by the Chu family and were founded by Defendant Phillip Chu, who claims to be "in charge" and who Defendants have admitted hired and fired delivery workers. Jose Tso has admitted that he hires delivery workers at Flor de Mayo's 2651 Broadway location; is responsible for setting delivery workers' terms and conditions of employment; and is jointly responsible, along with Phillip Chu, for setting employees' wages and schedules at Flor de Mayo's 484 Amsterdam Avenue location. Dennis Chu has also admitted that he manages the 484 Amsterdam Avenue location. These stipulations and admissions, along with Plaintiffs' testimony, will establish that Defendants are personally liable under FLSA and New York Labor Law.

**CONCLUSION**

The authorities cited above, in conjunction with the evidence to be adduced at trial, demonstrate the Plaintiffs are entitled to prevail on their claims against Defendants. Plaintiffs are willing to provide any additional briefing that the Court may request and respectfully ask that the Court permit Plaintiffs to submit additional papers after trial, if necessary, to aid in the computation of damages, prejudgment interest, and attorneys' fees.

Dated:   New York, New York
         March 18, 2008

                              DAVIS POLK & WARDWELL


                              By:    s/ Brian S. Weinstein
                                    Brian S. Weinstein (BW-1547)
                                    Matteo J. Rosselli (MR-6422)
                                    Edward Sherwin (ES-3072)
                                    William R. Miller (WM-9975)
                                    450 Lexington Avenue
                                    New York, NY 10017
                                    (212) 450-4921

                                    David A. Colodny (DC-4234)
                                    URBAN JUSTICE CENTER
                                    123 William Street, 16th Floor
                                    New York, NY 10038
                                    (646) 459-3006

                                    *Attorneys for Plaintiffs*