UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

FERNANDO LOPEZ, ADOLFO LOPEZ,      :
VENANCIO GALINDO and GIL SANTIAGO,  :

                    Plaintiffs,    :    No. 07 Civ. 6526 (AJP)

                - against -          :

FLOR DE MAYO, INC., CHO FAMILIA    :
DYNASTIA, INC., PHILLIP CHU, DENNIS CHU :
and JOSE TSO,                   :

                    Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

       This action came on for trial on April 8, 2008, before the Court sitting without a jury.

The Court, having heard the testimony and having examined the evidence offered by the parties,

makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a):

## FINDINGS OF FACT

### I.     BACKGROUND

       1.     Plaintiffs Fernando Lopez, Adolfo Lopez, Venancio Galindo, and Gil Santiago

are current or former delivery workers at restaurants named Flor de Mayo located at 484

Amsterdam Avenue, New York, New York 10024 ("Flor de Mayo Amsterdam"), and 2651

Broadway, New York, New York 10025 ("Flor de Mayo Broadway") (collectively, "Flor de

Mayo").  See [Proposed] Joint Pretrial Order, Stipulated Statement of Facts (hereinafter "Stip.

Facts") ¶¶ 18–22.

       2.     Plaintiffs commenced this action against Defendants Flor de Mayo, Inc., Phillip

Chu, Dennis Chu, and Jose Tso by the filing of the Complaint on July 20, 2007, and against

Defendants Cho Familia Dynastia, Inc., by the filing of the Amended Complaint on February 8, 2008.  See Stip. Facts ¶ 1.

       3.       This action is brought by Plaintiffs with respect to acts and/or omissions occurring after August 1, 2000.  See Pls.' Expected Test. at Trial.

       4.       Defendant Jose Tso is also known as Jose Chu.  See Stip. Facts ¶ 2.

## II.    DEFENDANTS

### A.    <u>Flor de Mayo, Inc.</u>

       5.       Flor de Mayo, Inc. has owned and operated Flor de Mayo Amsterdam since 1999.  See Stip. Facts ¶ 3.

       6.       Flor de Mayo, Inc. is incorporated in the State of New York.  See Stip. Facts ¶ 4.

       7.       Since 2000, Defendant Flor de Mayo, Inc. has been a business or enterprise engaged in interstate commerce with annual gross sales over $500,000 per year.  See Stip. Facts ¶ 5.

       8.       Defendant Phillip Chu and William Cho are the sole shareholders of Flor de Mayo, Inc.  See Stip. Facts ¶ 6.

       9.       Defendant Phillip Chu is President of Flor de Mayo, Inc.  See Stip. Facts ¶ 7.

### B.    <u>Cho Familia Dynastia, Inc.</u>

      10.     Flor de Mayo Broadway has been operating since 1988.  See Stip. Facts ¶ 8.

      11.     Cho Familia Dynastia, Inc. has owned and operated Flor de Mayo Broadway since November 2002.  See Stip. Facts ¶ 9.

      12.     Cho Familia Dynastia, Inc. is incorporated in the State of New York.  See Stip. Facts ¶ 10.

13.    Since 2003, Defendant Cho Familia Dynastia, Inc. has been a business or enterprise engaged in interstate commerce with annual gross sales over $500,000 per year.  See Stip. Facts ¶ 11.

14.    Defendant Dennis Chu and Nelson Cho are the sole shareholders of Cho Familia Dynastia, Inc.  See Stip. Facts ¶ 12.

15.    Nelson Cho is President of Cho Familia Dynastia, Inc.  See Stip. Facts ¶ 13.

**C.    Individual Defendants**

16.    Since 2000, Defendant Jose Tso had management responsibilities at Flor de Mayo Amsterdam and Flor de Mayo Broadway including, but not limited to, overseeing employees and overall operation of the restaurants, hiring and firing employees, setting schedules for employees, determining the rate and method of any compensation provided to employees, and controlling other terms and conditions of employment.  See Stip. Facts ¶ 14.

17.    Since 2000, Defendant Dennis Chu had management responsibilities at Flor de Mayo Amsterdam and Flor de Mayo Broadway including, but not limited to, overseeing employees and overall operation of the restaurant, setting schedules for employees, paying wages to employees, and controlling other terms and conditions of employment.  See Stip. Facts ¶ 15.

18.    Since 2000, Defendant Phillip Chu had management responsibilities at Flor de Mayo Amsterdam and Flor de Mayo Broadway including, but not limited to, overseeing employees and overall operation of the restaurants, hiring and firing employees, setting schedules for employees, controlling the terms and conditions of employment, determining the rate and method of any compensation provided to employees, and maintaining employment records.  See Stip. Facts ¶ 16.

III.    **PLAINTIFFS**

     A.    <u>**Plaintiffs' Employment Tenure**</u>

     19.    Plaintiff Venancio Galindo was employed as a delivery worker at Flor de Mayo Amsterdam for the period September 1, 2006 through July 22, 2007. <u>See</u> Stip. Facts ¶ 18.

     20.    Plaintiff Adolfo Lopez was employed as a delivery worker at Flor de Mayo Amsterdam for the period July 1, 2002 through August 31, 2002. <u>See</u> Pls.' Expected Test. at Trial.

     21.    Plaintiff Adolfo Lopez was employed as a delivery worker at Flor de Mayo Broadway for the period October 1, 2002 through April 25, 2004. <u>See</u> Pls.' Expected Test. at Trial.

     22.    Plaintiff Adolfo Lopez was employed as a busboy at Flor de Mayo Broadway from December 19, 2005 through January 23, 2006 and as a delivery worker at Flor de Mayo Amsterdam for the period including, but not limited to, January 24, 2006 through September 27, 2007. <u>See</u> Stip. Facts ¶ 19.

     23.    Plaintiff Fernando Lopez was employed as a delivery worker at Flor de Mayo Amsterdam for the periods including August 1, 2000 through June 30, 2002 and September 1, 2002 through December 31, 2002. <u>See</u> Pls.' Expected Test. at Trial.

     24.    Plaintiff Fernando Lopez was employed as a delivery worker at Flor de Mayo Amsterdam for the period January 1, 2003 through March 31, 2003. <u>See</u> Stip. Facts ¶ 21.

     25.    Plaintiff Fernando Lopez was employed as a delivery worker at Flor de Mayo Amsterdam for the period August 1, 2003 through September 30, 2003. <u>See</u> Pls.' Expected Test. at Trial.

26.     Plaintiff Fernando Lopez was employed as a delivery worker at Flor de Mayo Amsterdam for the period October 1, 2003 through October 31, 2004.  <u>See</u> Stip. Facts ¶ 21.

27.     Plaintiff Fernando Lopez was employed as a delivery worker at Flor de Mayo Amsterdam for the period March 1, 2005 through April 10, 2005.  <u>See</u> Pls.' Expected Test. at Trial.

28.     Plaintiff Fernando Lopez was employed as a delivery worker at Flor de Mayo Amsterdam for the period April 11, 2005 through the present. <u>See</u> Stip. Facts ¶ 21.

29.     Plaintiff Gil Santiago was employed as a delivery worker at Flor de Mayo Amsterdam for the period March 1, 2001 through February 28, 2003.  <u>See</u> Pls.' Expected Test. at Trial.

30.     Plaintiff Gil Santiago was employed as a delivery worker at Flor de Mayo Amsterdam for the period March 1, 2003 through September 10, 2006.  <u>See</u> Stip. Facts ¶ 22.

**B.     <u>Number of Days Plaintiffs Worked Per Week</u>**

31.     Plaintiff Venancio Galindo worked six days each week at Flor de Mayo Amsterdam from the beginning of his employment through some time in April 2007.  <u>See</u> Stip. Facts ¶ 23.

32.     Plaintiff Adolfo Lopez worked six days each week for the periods he worked at Flor de Mayo Amsterdam and Flor de Mayo Broadway through some time in April 2007.  <u>See</u> Stip. Facts ¶ 24.

33.     Plaintiff Fernando Lopez worked six days each week for the periods he worked at Flor de Mayo Amsterdam prior to December 15, 2005.  <u>See</u> Stip. Facts ¶ 25.

34.     Plaintiff Fernando Lopez worked five days each week for the periods he worked at Flor de Mayo Amsterdam after December 15, 2005. <u>See</u> Stip. Facts ¶ 26.

35.     Plaintiff Gil Santiago worked six days each week at Flor de Mayo Amsterdam for the entire duration of his employment.  See Stip. Facts ¶ 27.

     C.    **Plaintiffs' Work Schedule and Responsibilities**

36.     Since 2000, delivery service has been available at Flor de Mayo Amsterdam and Flor de Mayo Broadway from noon to midnight every day.  See Stip. Facts ¶ 17.

37.     Before some time in April 2007, the schedule for delivery workers at Flor de Mayo Amsterdam and Flor de Mayo Broadway, including Plaintiffs, alternated weekly, such that they worked 11 hours each day one week and 12 hours each day the following week, from the time they began working until the time they stopped working at night.  See Stip. Facts ¶ 28.

38.     Plaintiffs were required to remain at the restaurants during their shifts and only left during their shifts for work-related purposes for the benefit of Defendants, such as for the purpose of making a delivery, and thus worked continuously from the beginning of their shift until the end of their shift without breaks.  See Pls.' Expected Test. at Trial.

39.     Responsibilities for delivery workers at Flor de Mayo Amsterdam, including Plaintiffs, included, but were not limited to, the following: (i) delivering food orders to customers; (ii) cleaning the sidewalk in front of the restaurant; (iii) cleaning the restaurant's windows; (iv) cleaning the floors of the restaurant's dining area; (v) cleaning the restaurant's bathrooms; (vi) stocking and organizing merchandise in the restaurant's basement; (vii) cutting cardboard boxes for delivery bags; (viii) taking out the garbage; and (ix) filling containers with sauces included in deliveries.  See Stip. Facts ¶ 40.

40.     Responsibilities for delivery workers at Flor de Mayo Amsterdam, including Plaintiffs, also included, but were not limited to, preparing utensils to be included in deliveries. See Pls.' Expected Test. at Trial.

41.     Responsibilities for delivery workers at Flor de Mayo Broadway, including Plaintiffs, included, but were not limited to, the following: (i) delivering food orders to customers; (ii) cleaning the sidewalk in front of the restaurant; (iii) cleaning the floors of the restaurant's dining area; (iv) cutting cardboard boxes for delivery bags; and (v) taking out the garbage.  See Stip. Facts ¶ 41.

42.     Responsibilities for delivery workers at Flor de Mayo Broadway, including Plaintiffs, also included, but were not limited to, cleaning the restaurant's windows.  See Pls.' Expected Test. at Trial.

### D.     **Plaintiffs' Compensation**

43.     Defendants paid Plaintiffs $15 per day for each day worked from August 1, 2000 through March 15, 2002.  See Pls.' Expected Test. at Trial.

44.     Defendants paid Plaintiffs $20 per day for each day worked from March 16, 2002 through December 31, 2002.  See Pls.' Expected Test. at Trial.

45.     Defendants paid Plaintiffs $20 per day for each day worked from January 1, 2003 through June 30, 2004.  See Stip. Facts ¶ 29.

46.     Defendants paid Plaintiffs $25 per day for each day worked from July 1, 2004 through June 30, 2006.  See Stip. Facts ¶ 30.

47.     Defendants paid Plaintiffs $30 per day for each day worked from July 1, 2006 through December 31, 2006.  See Stip. Facts ¶ 31.

48.     Defendants paid Plaintiffs $35 per day for each day worked from January 1, 2007 through some time in April 2007.  See Stip. Facts ¶ 32.

49.     Defendants paid Plaintiffs their wages in cash on a weekly basis.  See Stip. Facts ¶ 33.

E.    <u>**Plaintiffs' Bicycles**</u>

50.    Defendants required delivery workers employed at Flor de Mayo Amsterdam and Flor de Mayo Broadway, including Plaintiffs, to have a bicycle.  <u>See</u> Stip. Facts ¶ 37.

51.    Defendants did not provide bicycles to delivery workers employed at Flor de Mayo Amsterdam and Flor de Mayo Broadway, including Plaintiffs.  <u>See</u> Stip. Facts ¶ 38.

52.    Defendants did not reimburse delivery workers employed at Flor de Mayo Amsterdam and Flor de Mayo Broadway, including Plaintiffs, for the costs of purchasing and repairing bicycles.  <u>See</u> Stip. Facts ¶ 39.

53.    Plaintiffs each spent approximately $500 per year to purchase and repair the bicycles required for their employment at Flor de Mayo Amsterdam and Flor de Mayo Broadway.  <u>See</u> Pls.' Expected Test. at Trial.

F.    <u>**Plaintiffs' Ignorance of Minimum Wage and Overtime Laws**</u>

54.    Plaintiff Venancio Galindo was not aware of his legal right to receive a minimum hourly wage for employment until approximately December 2006.  <u>See</u> Pls.' Expected Test. at Trial.

55.    Plaintiff Venancio Galindo was not aware of his legal right to receive compensation at a rate of time and a half for each hour that exceeded forty in a workweek until approximately March 2007.  <u>See</u> Pls.' Expected Test. at Trial.

56.    Plaintiff Adolfo Lopez was not aware of his legal right to receive a minimum hourly wage for employment until approximately December 2006.  <u>See</u> Pls.' Expected Test. at Trial.

57.    Plaintiff Adolfo Lopez was not aware of his legal right to receive compensation at a rate of time and a half for each hour that exceeded forty in a workweek until approximately March 2007.  See Pls.' Expected Test. at Trial.

58.    Plaintiff Fernando Lopez was not aware of his legal right to receive a minimum hourly wage for employment until approximately November 2006.  See Pls.' Expected Test. at Trial.

59.    Plaintiff Fernando Lopez was not aware of his legal right to receive compensation at a rate of time and a half for each hour that exceeded forty in a workweek until approximately November 2006.  See Pls.' Expected Test. at Trial.

60.    Plaintiff Gil Santiago was not aware of his legal right to receive a minimum hourly wage for employment until approximately October 2006.  See Pls.' Expected Test. at Trial.

61.    Plaintiff Gil Santiago was not aware of his legal right to receive compensation at a rate of time and a half for each hour that exceeded forty in a workweek until approximately March 2007.  See Pls.' Expected Test. at Trial.

## IV.    DEFENDANTS' RECORDKEEPING PRACTICES

62.    At some time in 2005, Defendants installed a punch clock system to keep track of hours worked by employees at Flor de Mayo Amsterdam and Flor de Mayo Broadway, including Plaintiffs.  See Stip. Facts ¶ 42.

63.    Prior to the installation of the punch clock system, Defendants did not document hours worked by employees at Flor de Mayo Amsterdam and Flor de Mayo Broadway, including Plaintiffs.  See Stip. Facts ¶ 43.

64.     Prior to April 2007, Defendants did not retain the time cards used in conjunction with the punch clock system to document the time worked by delivery workers employed at Flor de Mayo Amsterdam and Flor de May Broadway, including Plaintiffs.  See Stip. Facts ¶ 44.

65.     Prior to April 2007, Defendants did not maintain records listing the names and addresses of Plaintiffs, Plaintiffs' occupational classifications and wage rates, the number of hours worked daily and weekly by Plaintiffs, the regular hourly rate of pay for Plaintiffs in which overtime compensation was due, an explanation of the basis of pay for Plaintiffs, deductions from Plaintiffs' gross wages, any allowances claimed as part of the minimum wage, or the date of payment to Plaintiffs and pay period covered by the payment.  See Stip. Facts ¶ 45.

66.     Defendants do not have any records relating to delivery workers employed at Flor de Mayo Amsterdam and Flor de Mayo Broadway, including Plaintiffs, before March 2003.  See Stip. Facts ¶ 46.

67.     Documents marked Flor_de_Mayo_Prod_0000001 through Flor_de_Mayo_Prod_0000005 and Flor_de_Mayo_Prod_0000017 through Flor_de_Mayo_Prod_0000021 were created and signed by Defendant Dennis Chu.  See Stip. Facts ¶ 47.  These documents were given by Defendant Dennis Chu to Plaintiffs identified in the documents on or about the dates listed in the documents as proof of their employment at Flor de Mayo Amsterdam or Flor de Mayo Broadway.  See Pls.' Expected Test. at Trial.

## V.     NOTICE AND POSTING OF MINIMUM WAGE LAWS

68.     Defendants did not post notices regarding minimum wage and overtime laws at Flor de Mayo Amsterdam and Flor de Mayo Broadway until March 2007.  See Stip. Facts ¶ 48.

69.    Defendants never informed Plaintiffs of the minimum wage and overtime laws, including the tip credit provision of FLSA, but Defendants informed each Plaintiff at the time of his hiring that a major portion of his compensation would be tips.  <u>See</u> Stip. Facts ¶ 49.

## VI.    DEFENDANTS' WILLFULNESS REGARDING PLAINTIFFS' COMPENSATION

70.    Defendants were aware of or showed reckless disregard as to the existence of federal and state minimum wage and overtime laws.  <u>See</u> Expected Test. at Trial.

71.    Defendants failed to research or inquire about the requirements of the minimum wage and overtime laws as they applied to Plaintiffs.  <u>See</u> Expected Test. at Trial.

## CONCLUSIONS OF LAW

**I.    SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION, AND VENUE**

1.    This Court has original jurisdiction over Plaintiffs' FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction over Plaintiffs' New York Labor Law claims under 28 U.S.C. § 1367.

2.    Defendants have not objected on the ground of lack of personal jurisdiction, and any such objection is thereby waived.

3.    Venue is proper in this district under 28 U.S.C. § 1391.

**II.    APPLICABILITY OF FLSA AND NEW YORK LABOR LAW TO DEFENDANTS AND PLAINTIFFS**

4.    Defendants Flor de Mayo, Inc., Cho Familia Dynastia, Inc., Phillip Chu, Dennis Chu, and Jose Tso are subject to the requirements of FLSA and New York Labor Law because they were or are Plaintiffs' "employers" at Flor de Mayo Amsterdam and Flor de Mayo Broadway.  See [Proposed] Joint Pretrial Order, Stipulated Statement of Laws (hereinafter "Stip. Laws") ¶ 1; see also 29 U.S.C. § 203(d); N.Y. Lab. Law §§ 2(6), 651(6).  Flor de Mayo Amsterdam and Flor de Mayo Broadway have been business enterprises engaged in interstate commerce with annual gross sales of over $500,000 since August 1, 2000.

5.    Flor de Mayo Amsterdam and Flor de Mayo Broadway are part of the "restaurant industry" within the meaning of New York Labor Law because they are eating and drinking places that prepare and offer food and beverages for human consumption on their premises with catering and delivery services available to the public.  See Stip. Laws ¶ 4; see also N.Y. Comp. Codes. R. & Regs. tit. 12, § 137–3.1.

## III.    BURDEN OF PROOF

6.    Where an employer has failed to keep records of wages, hours and other conditions of employment as required by FLSA, an employee can satisfy his burden if he "proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946).  In the absence of documentary evidence, an employee can meet this burden by relying on his recollection alone.  See, e.g., Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  Having done so, the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Anderson, 328 U.S. at 688.

7.    Courts have applied Anderson to suits under New York Labor Law, holding that if an employer fails to maintain proper records, the extent of the underpayment may be proved by other evidence, including the employee's testimony.  See Brown v. Tomcat Elec. Sec., Inc., No. 03 Civ. 5175 (FB) (JO), 2007 U.S. Dist. LEXIS 63542, at *19 (E.D.N.Y. Aug. 27, 2007); Hy-Tech Coatings v. N.Y. State Dep't of Labor, 226 A.D.2d 378, 379 (2d Dep't 1996).

8.    Accordingly, because Defendants failed to create and preserve records as required by both FLSA and New York Labor Law, the Anderson burden-shifting rule applies to Plaintiffs' FLSA and New York Labor Law claims.

## IV.    PLAINTIFFS' WAITING TIME WAS COMPENSABLE

9.    FLSA and New York Labor Law both require employers to compensate employees for all work "suffered or permitted," including "wait time."  See Moon v. Kwon, 248 F. Supp. 2d 201, 228 (S.D.N.Y. 2002) (citing 29 U.S.C. § 203(g); N.Y. Lab. Law § 2(7)).

10. The New York State Department of Labor similarly defines working time as "time worked or time of permitted attendance, including waiting time, whether or not work is provided, and time spent in traveling as part of the duties of the employee." N.Y. Comp. Codes R. & Regs. tit. 12, § 137–3.6.

11. Accordingly, Plaintiffs are entitled to compensation for the entire time they were at the restaurants each day under FLSA and New York Labor Law because Plaintiffs spent their entire shifts either working or waiting for work to be provided.

## V.     DEFENDANTS VIOLATED FLSA

### A.     <u>Defendants Violated FLSA's Minimum Wage Provision</u>

12. Plaintiffs are entitled to minimum wage pursuant to FLSA because they were "employees" as defined by FLSA. <u>See</u> Stip. Laws ¶ 2; <u>see also</u> 29 U.S.C. §§ 203(e), 206(a). The federal minimum wage for the relevant time period was $5.15 per hour. <u>Id.</u> § 206(a)(1) (1996).

13. FLSA allows employers to pay tipped employees at an hourly rate less than the minimum wage if the employees' wages and tips, added together, meet or exceed the minimum wage. 29 U.S.C. § 203(m). To take advantage of this tip credit provision, an employer must inform the employee of the statutory requirements related to the tip credit and allow the employee to keep all tips received, with an exception made for the pooling of tips among employees who regularly receive tips. <u>Id.</u>

14. Defendants are not entitled to take advantage of FLSA's tip credit provision because they did not inform Plaintiffs of the statutory requirements related to the tip credit.

15. Accordingly, Plaintiffs are entitled to recover the difference between the hourly wage they were paid and the full minimum wage of $5.15 per hour because Defendants failed to

provide Plaintiffs with any notice of minimum wage and overtime laws, including the tip credit provision.  See Cao v. Chandara Corp., 00 Civ. 8057 (SAS) (KNF), 2001 U.S. Dist. LEXIS 8631, at *12–13 (S.D.N.Y. June 27, 2001) (holding that an employer is liable for the full minimum wage when failing to inform employees of FLSA's tip credit provision).

### B.  Defendants Violated FLSA's Overtime Provision

16.    Plaintiffs are entitled to overtime pay pursuant to FLSA because they were "employees" as defined by FLSA.  See Stip. Laws ¶ 2; see also 29 U.S.C. §§ 203(e), 207(a)(1).

17.    Pursuant to FLSA, Plaintiffs were entitled to one-and-one-half times the regular rate for every hour worked in excess of forty hours each week.  See 29 U.S.C. § 207(a)(1). Where an employee is unlawfully paid less than the minimum wage, "the overtime calculation must be based on the minimum wage to which he was entitled."  See Cao, 2001 U.S. Dist. LEXIS 8631, at *15.

18.    Accordingly, Plaintiffs are entitled to recover the difference between the wage they received from Defendants and the federally prescribed overtime rate of one-and-one-half times the full statutory minimum wage for each hour worked per week in excess of forty.

### C.  Defendants Violated FLSA by Failing to Reimburse Plaintiffs for the Costs Associated with the Purchase and Maintenance of Bicycles

19.    Regulations promulgated under FLSA make clear that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'"  29 C.F.R. § 531.35.  The regulations state:

> If it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

Id.

20.     Bicycles were tools of the trade as contemplated by FLSA because Defendants required Plaintiffs to have bicycles to make deliveries.  Accordingly, Plaintiffs are entitled to the costs associated with the purchase and maintenance of bicycles, because Plaintiffs were paid below the minimum wage, were required to have bicycles to make deliveries, and were not reimbursed the costs of purchasing or maintaining those bicycles.

## VI.    DEFENDANTS VIOLATED NEW YORK LABOR LAW

### A.    Defendants Violated New York Labor Law's Minimum Wage Provision

21.     Plaintiffs are entitled to minimum wage pursuant to New York Labor Law because they were "employees" as defined by New York Labor Law.  See Stip. Laws ¶ 3; see also N.Y. Lab. Law §§ 2(5), 651(5), 652.  Employers are obligated to pay employees the minimum wage as defined by New York Labor Law.  See N.Y. Lab. Law § 652(1).

22.     Employers in the restaurant industry are permitted to take a "tip allowance" for wages paid to service employees receiving tips, reducing the applicable minimum wage owed to such employees.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 137–1.4.  A service employee in the restaurant industry is

> an employee who customarily receives tips at the rate of: (1) $1.15 or more per hour on and after March 31, 2000; (2) $1.35 or more per hour on and after January 1, 2005; (3) $1.50 or more per hour on and after January 1, 2006; and (4) $1.60 or more per hour on and after January 1, 2007.

Id. § 137–3.3.

23.     At all relevant times, Plaintiffs were service employees as defined by New York Labor Law.

24.     Accordingly, Plaintiffs are entitled to the difference between the hourly wage they were paid and the minimum wage for service employees as defined by New York Labor Law.

16

**B.**    **Defendants Violated New York Labor Law's Overtime Provision**

25.      Plaintiffs are entitled to overtime pay pursuant to New York Labor Law because they are "employees" as defined by New York Labor Law.  See Stip. Laws ¶ 3; see also N.Y. Lab. Law §§ 2(5), 651(5); N.Y. Comp. Codes. R. & Regs. tit. 12, § 137–1.3.  Pursuant to New York Labor Law, Plaintiffs were entitled to overtime compensation at a rate of one-and-one-half times the ordinary minimum wage (minus a tip allowance) for each hour worked per week in excess of forty.  N.Y. Comp. Codes. R. & Regs. tit. 12, § 137–1.3.

26.      Accordingly, Plaintiffs are entitled to recover the difference between the wage they received from Defendants and the overtime rate of one-and-one-half times the ordinary minimum wage (minus a tip allowance) for each hour worked per week in excess of forty.

**C.**    **Defendants Violated New York Labor Law's "Spread of Hours" Provision**

27.      New York Labor Law mandates that any restaurant employee whose workday is longer than ten hours "shall receive one hour's pay at the basic minimum hourly wage rate before allowances."  Id. § 137–1.7.  For tipped employees, like Plaintiffs, this extra hour's pay is at the ordinary New York minimum wage rate—not the reduced rates at which their base and overtime salaries may be calculated.  Id.  "Spread of hours" is defined as the number of hours from the time an employee starts his workday until the time the employee finishes his workday, including both working time and non-working time (e.g., lunch breaks or off-time between split shifts).  Id. § 137–3.11.

28.      Accordingly, Plaintiffs are entitled to an extra hour's pay at the ordinary New York minimum wage rate for each day worked in which the "spread of hours" exceeded ten hours.

17

D.    **Defendants Violated New York Labor Law by Failing to Reimburse Plaintiffs for the Costs Associated with the Purchase and Maintenance of Bicycles**

29.    Under New York Labor Law, "[t]he minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer." Id. § 137-2.5(b).

30.    As described above, Defendants required Plaintiffs to have bicycles to make deliveries. Accordingly, Plaintiffs are entitled to the costs associated with the purchase and maintenance of bicycles, because Plaintiffs were paid below the minimum wage, were required to have bicycles to make deliveries, and were not reimbursed the costs of purchasing or maintaining those bicycles.

## VII.    DAMAGES

A.    **Statute of Limitations**

31.    Under the typical statute of limitations for FLSA, Defendants would be liable for all damages accruing under FLSA from July 18, 2004, three years before Plaintiffs filed the Complaint in this action, through the present, because Defendants' conduct was willful, as discussed infra. See 29 U.S.C. § 255(a) (two-year statute of limitations, running from the date the cause of action accrued; three-year statute of limitations where violation is "willful").

32.    However, the doctrine of equitable tolling "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir. 1990). "The essence of the doctrine is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action," especially where a defendant's conduct "concealed from the plaintiff the existence of the cause of action." Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985) (citations and internal quotation marks omitted).

18

33.    Equitable tolling has been considered appropriate in a number of FLSA cases in light of an employer's failure to post the required notices regarding minimum wage and overtime laws.  See, e.g., Ramirez v. CSJ & Co., No. 06 Civ. 13677 (LAK), 2007 U.S. Dist. LEXIS 28901, at *7–8 (S.D.N.Y. Apr. 3, 2007).

34.    Accordingly, the statute of limitations for Plaintiffs' FLSA claims is equitably tolled and Defendants are liable for all damages accruing under FLSA from August 1, 2000, the date on which Plaintiff Fernando Lopez began his employment at Flor de Mayo Amsterdam, through the present because Defendants failed to post a notice of workers' rights in the workplace, as required by law, and, as a result, Plaintiffs were unaware of their rights under FLSA until very shortly before this suit was commenced.

35.    Defendants are liable for all damages accruing under New York Labor Law from July 18, 2001, six years before Plaintiffs filed the Complaint in this action, through the present. See N.Y. Lab. Law §§ 198(3), 663(3) (six-year statute of limitations).

**B.    Compensatory Damages**

36.    As established above, Plaintiffs have met their burden of establishing that they performed work for which they were improperly compensated by Defendants. Also as established above, Defendants bear the burden of negating Plaintiffs' evidence of their hours worked and wages earned because Defendants failed to maintain records regarding hours, wages, and other conditions of employment as required by FLSA and New York Labor Law.

37.    In the absence of rebuttal by Defendants, Plaintiffs' recollection and documentation of hours worked and compensation owed are presumed to be correct.  See Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 U.S. Dist. LEXIS 35, at *8 (S.D.N.Y. Jan. 7, 2004).

38.    Defendants and Plaintiffs agreed to many of the facts regarding the hours worked and wages earned by Plaintiffs.  Defendants failed to negate Plaintiffs' evidence for the few issues in dispute and, therefore, Plaintiffs' recollection and documentation of hours worked and compensation owed is presumed to be correct.  Accordingly, each Plaintiff is entitled to compensatory damages totaling:

(a)    the difference between the hourly wage he was paid by Defendants and the statutorily prescribed minimum wage;

(b)    the difference between the wage he was paid by Defendants and the statutorily prescribed overtime rate of one-and-one-half times the statutory minimum wage for each hour worked per week in excess of forty hours;

(c)    an extra hour of pay at the applicable New York minimum wage for each day on which he worked a spread of hours of more than ten hours;

(d)    and the costs associated with the purchase and maintenance of bicycles which Defendants required him to have for purposes of employment.

**C.    Liquidated Damages**

39.    An employer who violates the minimum wage or overtime provisions of FLSA "shall be liable to the employee or employees affected in the amount of their unpaid wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  An employer may avoid liquidated damages only if it meets "the 'difficult' burden of establishing, by 'plain and substantial' evidence, its subjective good faith and objective reasonableness."  Reich v. S. New Eng. Telecommc'ns Corp., 121 F.3d 58, 71 (2d Cir. 1997) (citations and internal quotation marks omitted)

40. Plaintiffs are entitled to liquidated damages under FLSA because Defendants have not pleaded a "good faith" affirmative defense. Furthermore, even if Defendants had pleaded the affirmative defense of good faith, Defendants' claims of ignorance regarding the minimum wage and overtime laws until April 2007 are inconsistent with a finding of good faith.

41. New York Labor Law allows a worker to recover 25 percent of his unpaid wages as liquidated damages where his employer's violation was willful. N.Y. Lab. Law §§ 198(1-a), 663(1). "[T]he standard for willfulness for purposes of the FLSA statute of limitations does not appreciably differ from the standard applicable under New York law when determining whether to award liquidated damages . . . ." See Moon, 248 F. Supp. 2d at 235. The Supreme Court has held that a willful violation of FLSA is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

42. Plaintiffs are entitled to liquidated damages under New York Labor Law because Defendants' conduct was willful in that they knew or showed a reckless disregard for Flor de Mayo's legal obligations to its workers, including Plaintiffs.

43. Therefore, because Defendants are liable for the full amount of liquidated damages under FLSA, each Plaintiff is entitled to recover liquidated damages equivalent to:

(a) the difference between the hourly wage he was paid by Defendants and the statutorily prescribed minimum wage;

(b) the difference between what the wage he was paid by Defendants and the statutorily prescribed overtime rate of one-and-one-half times the statutory minimum wage for each hour worked per week in excess of forty hours;

21

(c)    and the costs associated with the purchase and maintenance of bicycles which Defendants required him to have for purposes of employment.

44.    Furthermore, because Defendants are liable for the full amount of liquidated damages under New York Labor Law, each Plaintiff is entitled to recover liquidated damages equivalent to 25 percent of:

(a)    to the extent not awarded under FLSA, the difference between the hourly wage he was paid by Defendants and the statutorily prescribed minimum wage;

(b)    to the extent not awarded under FLSA, the difference between the wage he received from Defendants and the overtime rate of one-and-one-half times the ordinary minimum wage (minus a tip allowance) for each hour worked per week in excess of forty hours;

(c)    an extra hour of pay at the applicable New York minimum wage for each day on which he worked a spread of hours of more than ten hours;

(d)    and to the extent not awarded under FLSA, the costs associated with the purchase and maintenance of bicycles which Defendants required him to have for purposes of employment.

**D.    Prejudgment Interest Under New York Labor Law**

45.    Plaintiffs are also entitled to prejudgment interest in addition to liquidated damages on their New York Labor Law claims, pursuant to N.Y. C.P.L.R. § 5001.  See Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 265 (2d Cir. 1999).

E.    **Attorneys' Fees and Costs**

46.    Plaintiffs are also entitled to recover reasonable attorneys' fees and costs against Defendants for their violations of the minimum wage and overtime provisions of the FLSA and New York Labor Law.  See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198, 663.

## VIII.   DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE

47.    Defendants are jointly and severally liable for the judgment against Defendants. Each Defendant acted as Plaintiffs' joint employer and is responsible both individually and jointly for Defendants' violations of FLSA and New York Labor Law.  See 29 U.S.C. § 216(b); 29 C.F.R. § 791.2; see also Jiao v. Chen, No. 03 Civ. 165 (DF), 2007 U.S. Dist. LEXIS 96480, at *30–31 n.12 (S.D.N.Y. Mar. 30, 2007) ("[C]ourts have interpreted the definition of 'employer' under New York Labor Law coextensively with the definition used by the FLSA.").


Dated:   New York, New York
         March 18, 2008

                              DAVIS POLK & WARDWELL


                         By:    s/ Brian S. Weinstein
                                Brian Weinstein (BW-1547)
                                Matteo J. Rosselli (MR-6422)
                                Edward Sherwin  (ES-3072)
                                William R. Miller (WM-9975)
                                450 Lexington Avenue
                                New York, NY 10017
                                (212) 450-4000

                                David A. Colodny (DC-4234)
                                URBAN JUSTICE CENTER
                                123 William Street, 16th Floor
                                New York, NY 10038
                                (646) 459-3006

                                *Attorneys for Plaintiffs*

23